## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

ROBERT TITTLE,

     Plaintiff,

     v.

JANET PETRO, *Acting Administrator,*
*National Aeronautics and*
*Space Administration,*

     Defendant.

Civil Action No. 24-3061-TDC

### MEMORANDUM OPINION

Plaintiff Robert Tittle has filed this civil action against the Acting Administrator of the National Aeronautics and Space Administration ("NASA"), in which he asserts a claim of age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623. NASA has filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be GRANTED.

### BACKGROUND

**I.    Alleged Discrimination**

Plaintiff Robert Tittle, who was born in May 1946, worked as a Physical Scientist at NASA's Wallops Flight Facility, which is a division of the NASA Goddard Space Flight Center ("GSFC") in Greenbelt, Maryland, for over 40 years from January 24, 1979 to September 13, 2019. While at NASA, Tittle was a member of Local 1923 of the American Federation of Government

Employees ("AFGE"). For the first 38 years of his career, Tittle was rated as at least a fully successful performer and was never the subject of discipline. Tittle was terminated from service pursuant to a Notice of Decision to Remove issued on August 30, 2019. At the time of his removal, Tittle was 73 years old.

Tittle's immediate supervisor, David Wolff, and second-level supervisor, James Irons, were both substantially younger than Tittle. On November 6, 2017, Wolff placed Tittle on a performance improvement plan ("PIP") for an initial period of 120 days. Contrary to NASA's typical procedures and protocols, Tittle's PIP was extended for an additional 120 days in the spring of 2018. Nevertheless, Tittle successfully completed the PIP on July 25, 2018 and received a rating of "fully successful" in his 2018 performance appraisal. Compl. ¶ 18, ECF No. 1.

In the fall of 2018, Tittle applied for and was granted approximately six weeks of leave under the NASA Family Friendly Sick Leave policy to attend to his mother, who was experiencing a serious health condition. Tittle alleges that after he requested this leave, Wolff and Irons began to undertake efforts to remove him from federal service.

On September 18, 2018, Wolff placed Tittle on another PIP that imposed performance standards that were inconsistent with NASA's policies relating to employee performance and termination. For example, Tittle was required to conduct certain calibration duties that were unrelated to his job, were not included in his job description, and had never previously been required of him. According to Tittle, other requirements of the PIP, such as those requiring Tittle to perform "weekly documentation in the group laboratory notebooks," were "unworkable," and "unattainable." *Id.* ¶ 29.

During the second PIP, Tittle's efforts were often undermined by his supervisors. For example, the PIP prescribed that Tittle and Wolff were to have weekly meetings, during which

2

Wolff was supposed to provide assistance and guidance to Tittle regarding his progress, but these meetings occurred only sporadically. Although Tittle repeatedly told Wolff that he was not receiving adequate assistance and training that he needed in order to complete the PIP, those requests were ignored. Wolff also failed to provide Tittle with necessary equipment, materials, components, processes, technical standards, and updates to his 12-year-old computer, without which Tittle had difficulty completing the PIP. At other times during the second PIP, Tittle made recommendations to Wolff and Irons about alternative calibration techniques, but the supervisors refused to consider his suggestions.

At no time during the second PIP did Wolff inform Tittle that he was not meeting the performance objectives. However, at its conclusion in December 2018, Wolff informed Tittle that he had not satisfied the PIP's requirements without providing information relating to next steps. Six months later, on June 4, 2019, Irons issued a Notice of Proposed Removal ("NOPR") to Tittle. On June 13, 2019, Tittle, through his union representative, submitted a written response to the NOPR, and Tittle also provided an oral response on June 18, 2019. Tittle subsequently submitted supplemental materials on July 2, 22, and 26, 2019 to rebut the asserted reasons for his removal. Nevertheless, on August 30, 2019, NASA issued to Tittle a final Notice of Decision to Remove ("NODR") which stated that his termination from federal service would be effective on September 13, 2019.

According to Tittle, his treatment throughout these events differed from that of his "substantially younger co-workers," in multiple ways, including that they were not subjected to PIPs, not assigned the duties that were given to him while on the second PIP, not subjected to PIP extensions, and overall were not "held to similar, unreasonable performance standards." *Id*. ¶ 30. He has also alleged that such co-workers were not denied resources essential to performing their

3

jobs, that they received frequent computer updates that he did not receive, and they were not, as he was, held accountable for actions that occurred when they were absent on leave.

## II.    Procedural History

On August 23, 2019, following Tittle's receipt of the NOPR but prior to issuance of the final NODR, Tittle contacted NASA's Office of Diversity and Equal Opportunity ("ODEO") with the intention of filing an administrative equal employment opportunity ("EEO") complaint. An ODEO representative, however, informed Tittle that he could file either an EEO complaint or a union grievance pursuant to the collective bargaining agreement between Local 1923 and GSFC ("the CBA"), but not both. On or about August 26, 2019, Tittle received a notice stating that "[i]f your collective bargaining agreement allows allegations of discrimination and you raise those allegations in [a union] grievance, you will not be allowed to later file an EEO discrimination complaint on the same issue." *Id.* ¶ 39. In fact, although the CBA includes provisions relating to the filing of union grievances, section 16.03 of the CBA provides that "complaints of discrimination because of race, color, religion, sex, age, national origin, or handicapping condition" are "excluded from the coverage of this grievance procedure." *Id.* ¶ 43. Title, however, asserts that he was never informed that the CBA's grievance procedures excluded complaints of age discrimination.

On September 5, 2019, at Tittle's request and as part of the CBA's grievance procedure, Local 1923 filed a written grievance to the Acting Director of GSFC that contested his removal but did not include a claim of age discrimination. On October 3, 2019, ODEO sent a letter to Tittle stating that as a result of the filing of the union grievance, it would not continue to process an EEO complaint relating to his termination. On October 30, 2019, Tittle's union grievance was denied. On November 8, 2019, pursuant to the CBA, Local 1923 invoked the right to arbitration relating

4

to the grievance. However, on December 3, 2019, Local 1923 informed Tittle that it planned to revoke its invocation of arbitration.

On December 13, 2019, Tittle filed an appeal of his removal from federal service with the Merit Systems Protection Board ("MSPB"), in which he alleged that his removal was a prohibited personnel practice under 5 U.S.C. § 2302(b) in that it was based on age discrimination, interference with his rights under Title II of the Family and Medical Leave Act, and retaliation against him for having engaged in protected activities. On December 26, 2019, the MSPB ordered that Tittle show cause for why the MSPB had jurisdiction to hear his appeal. After briefing on the matter, the MSPB dismissed Tittle's appeal on February 7, 2020 based on a lack of jurisdiction for two reasons. First, where Tittle elected to challenge his removal through a union grievance, rather than taking it to the MSPB directly, Tittle was precluded from pursuing the matter through the MSPB under 5 U.S.C. § 7121(e)(1). Second, where 5 U.S.C. § 7121(d) requires that the Board may review only a final decision on a grievance, and where the CBA's grievance procedure provided for arbitration as the final step in the grievance process, the MSPB held that it did not have jurisdiction because Tittle's grievance had not been pursued through arbitration and thus had not yet resulted in a final decision.

On March 13, 2020, Tittle filed a Petition for Review with the MSPB. Because the MSPB lacked a quorum from January 7, 2017 to March 3, 2022, the Petition went unreviewed for 52 months. On July 11, 2024, where no final adjudication had been issued by the MSPB, and where as a result of the lengthy period without a quorum, the MSPB had a backlog of more than 2,500 cases that had been filed before Tittle's Petition for Review and were still awaiting adjudication, Tittle requested leave to withdraw the Petition for Review, which the MSPB granted on August 2, 2024.

On August 30, 2024, Tittle filed a Request for Review with the United States Equal Employment Opportunity Commission ("EEOC"), Office of Federal Operations ("OFO"). On September 19, 2024, the OFO denied this request and informed Tittle that he had 30 days from receipt of the decision to file a civil action in federal court. On Monday, October 21, 2024, Tittle filed the present action within this deadline. *See* Fed. R. Civ. P. 6(a)(2)(C). In the Complaint, Tittle alleges age discrimination, in violation of the ADEA, arising from his termination from NASA.

## DISCUSSION

In its Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, NASA asserts two arguments. First, NASA argues that this case should be dismissed because Tittle has not properly exhausted available administrative remedies as required before filing a civil action under the ADEA. Second, NASA argues that the case should be dismissed because Tittle has failed to allege sufficient facts to state a plausible claim of age discrimination under the ADEA.

## I.    Legal Standards

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), the Court may consider only the complaint, its attachments, and any documents attached to the motion "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, NASA has attached several exhibits to its Motion that were referenced in the Complaint and are therefore integral, including the CBA, Tittle's union grievance, and the February 7, 2020 MSPB decision. For his part, Tittle has attached to his memorandum in opposition to the Motion a declaration and multiple exhibits relating to the issue of exhaustion of administrative remedies. The following nine exhibits were referenced in, and are therefore integral to, Tittle's Complaint: Tittle's September 5, 2019 Union Grievance; the October 3, 2019 Letter from ODEO to Tittle; the October 29, 2019 Union Grievance Decision; the February 7, 2020 MSPB Initial Decision; Tittle's March 13, 2020 MSPB Petition for Review; Tittle's July 11, 2024 Motion for Voluntary Dismissal of his MSPB Petition; the August 2, 2024 MSPB Order granting that dismissal; Tittle's August 30, 2024 Request for Review by the EEOC; and the September 19, 2024 EEOC Decision.

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where other documents or evidence are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain

information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendant's Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). In this instance, Tittle has submitted a Rule 56(d) declaration asserting that discovery is necessary before resolving both whether he has exhausted administrative remedies and whether he was terminated because of his age. Tittle Decl. ¶ 4, ECF No. 19-2. Because the Rule 56(d) declaration properly asserts Tittle's need for discovery on several of NASA's arguments, the Court will treat NASA's Motion as a Motion to Dismiss only but will consider the exhibits attached to the Complaint and those attached to the briefs that are integral to the Complaint.

## II.    Exhaustion of Administrative Remedies

NASA first argues that the Complaint must be dismissed because Tittle has failed to exhaust available administrative remedies. Federal employees who are members of a union subject to a collective bargaining agreement with a negotiated grievance procedure ("union grievance procedure") are subject to administrative exhaustion requirements under the Civil Service Reform Act ("CSRA") and the Federal Service Labor-Management Relations Act ("FSLMRA"), 5 U.S.C. §§ 7101–7106, 7111–7123, 7131–7135. Under these statutes, such a federal employee may assert an employment discrimination claim through either statutory procedures applicable to such claims, such as those set forth in the ADEA, or through the union grievance procedure, provided that the

union grievance procedure allows for consideration of such a claim. *See* 5 U.S.C. § 7121(d). The employee may not pursue both paths. *See* 5 U.S.C. § 7121(d).

As to the statutory procedures relevant here, the ADEA provides two options while the CSRA provides a third. As to the first option under the ADEA, "[a]n individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies." *Stevens v. Dep't of the Treasury*, 500 U.S. 1, 5–6 (1991) (citing 29 U.S.C. § 633a(b) and (c)). As to the second ADEA option, a federal employee may "bypass" administrative proceedings and present the merits of the claim to a federal court in the first instance, provided that within 180 days of the discriminatory action the employee sends a notice to the EEOC of the intent to file suit. *Id.* at 6 (citing 29 U.S.C. § 633a(d)); *see Forester v. Chertoff*, 500 F.3d 920, 924 (9th Cir. 2007) (referring to this avenue as the administrative "bypass provision").

Meanwhile, the CSRA allows federal employees to assert discrimination claims before the MSPB alongside challenges to certain serious adverse employment actions taken against them, such as removals from employment or reductions in pay, in what is referred to as a "mixed case complaint." 5 U.S.C. §§ 1204, 7512, 7701; 29 C.F.R. § 1614.302(b); *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1980 (2017). To bring a "mixed case complaint" before the MSPB, a federal employee may either pursue the claim through the agency's EEO procedures and appeal the final decision to the MSPB, or the employee may initiate the mixed case complaint directly with the MSPB. *Perry*, 137 S. Ct. at 1980.

As for the option of pursuing a discrimination claim as part of a union grievance, if an employee pursues such a claim through the union grievance procedure and completes the process, the employee may seek review of the final decision, which may include an arbitrator's decision,

9

with the MSPB.  5 C.F.R. § 1201.155.  Even if the union grievance procedure did not permit an allegation of discrimination to be raised through the grievance process, the employee may still assert the discrimination claim before the MSPB.  5 C.F.R. § 1201.155(c).

Here, NASA argues that Tittle failed to comply with administrative exhaustion requirements before filing the Complaint in federal court.  First, NASA argues that because Tittle elected to pursue the union grievance procedure to dispute his removal, he was precluded from raising his age discrimination claim through the statutory procedures under the ADEA or through a mixed case complaint to the MSPB.  NASA further argues that, in choosing to proceed through the union grievance procedure, Tittle was required to fully exhaust the remedies available under the CBA, including by obtaining a "final" arbitral decision before proceeding to MSPB review under 5 U.S.C. § 7121(d).  Mot. at 20, ECF No. 15.  NASA asserts that where Tittle was not able to receive a final arbitral decision because Local 1923 revoked its decision to invoke arbitration on his behalf, Tittle failed to exhaust the union grievance procedure.  In addition, NASA asserts that even if Tittle could separately pursue the ADEA statutory process, he did not complete all required steps.

Upon review, regardless of whether Tittle's actions of filing the union grievance, seeking review at the MSPB, withdrawing the appeal due to the lack of timely review, and then filing the present civil action amounted to a failure to exhaust administrative remedies, the Court will not dismiss the Complaint on this basis at this time.  Notably, the requirement for exhaustion of administrative remedies is not jurisdictional and need not be pleaded in the complaint.  *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1846 (2019); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 401 (6th Cir. 2008) (holding that the requirement of administrative exhaustion under the ADEA is not jurisdictional).  Rather, it is an affirmative defense that must be established by the defendant.

10

*Kirklin v. Joshen Paper & Packaging of Arkansas Co.*, 911 F.3d 530, 534 (8th Cir. 2018) (holding that under the ADEA and Title VII of the Civil Rights Act of 1964, "the failure to exhaust administrative remedies is an affirmative defense that a defendant must prove"); *Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001) (same). Moreover, administrative exhaustion may, under certain circumstances, be excused based on equitable principles. *See Hickey v. Brennan*, 969 F.3d 1113, 1118 (10th Cir. 2020) (holding that the failure to comply with a requirement imposed on federal employees prior to filing a Title VII claim is an affirmative defense "subject to the same waiver and estoppel principles that govern other affirmative defenses" but noting that "equitable doctrines . . . are to be applied sparingly" (citation omitted)).

At this early stage, Tittle has plausibly asserted that any failure to exhaust administrative remedies could be excused for equitable reasons. In the context of employment discrimination complaints, equitable tolling of administrative requirements "might be warranted in cases involving bad advice from the governmental agency charged with enforcing discrimination complaints," *Poteat v. Mack Trucks, Inc.*, 106 F.3d 391 (table), No. 96-1437, 1997 WL 33117, *4 (4th Cir. Jan. 28, 1997), or those involving "agency error or misinformation," *Bishop v. Hazel & Thomas, PC*, 151 F.3d 1028 (table), No. 97-2284, 1998 WL 377912, *2 n.3 (4th Cir. July 1, 1998). More broadly, a failure to exhaust administrative remedies may be excused "if adequate remedies are not reasonably available." *Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006).

Here, Tittle has identified multiple problematic issues arising from the administrative process for which the facts have not yet been fully presented. He has alleged that when he sought to file an EEO complaint with the ODEO, an ODEO official would not process the complaint, and that ODEO staff did not warn him that his CBA did not allow discrimination complaints to be pursued through the union grievance procedure. He also received no such information during his

11

meetings with his Local 1923 union representatives. The fact that his union withdrew the request for arbitration and thus prevented a final decision pursuant to the union grievance procedure is a factor that may be considered in whether Tittle is entitled to equitable relief. *Id.* at 59 (remanding for consideration of whether equitable principles excused the plaintiff's failure to exhaust his administrative remedies where the plaintiff's union had unilaterally withdrawn from arbitration). Finally, Tittle has also plausibly asserted that his ability to secure relief through an appeal of his claims to the MSPB was effectively unavailable because the MSPB lacked a quorum for five years and thus left his claim unreviewed for over four years. Where the facts relating to these issues have not yet been fully developed, and the issue of whether any failure to exhaust should be excused for equitable reasons cannot be resolved without discovery, the Court will not dismiss this case based on the failure to exhaust administrative remedies.

## III.    Age Discrimination

NASA also argues that the Complaint should be dismissed because Tittle has not sufficiently pleaded that he was subjected to discrimination under the ADEA. The ADEA prohibits employment discrimination against individuals over the age of 40. 29 U.S.C. §§ 623(a)(1), 631(a). A plaintiff can establish an ADEA claim through direct or circumstantial evidence that "age was the 'but-for' cause of the challenged employer decision." *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009). To establish an ADEA claim through circumstantial evidence, the plaintiff may proceed through the approach adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), under which the employee must first establish a *prima facie* case of discrimination and then, if the employer articulates a non-discriminatory reason for the adverse employment action, must demonstrate that the stated reason is "a pretext" and that "the true reason is discriminatory."

12

*Palmer*, 72 F.4th at 63 (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016)). To state a *prima facie* claim of discrimination based on disparate treatment such as through discriminatory discipline, a plaintiff must present facts demonstrating: (1) the plaintiff's membership in a protected class; (2) the plaintiff's satisfactory job performance; (3) that the plaintiff was subjected to an adverse employment action; and (4) that similarly situated employees outside the protected class received more favorable treatment. *White v. BFI Waste Svcs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004). Under the ADEA, a plaintiff may establish the "similarly situated" prong with evidence that a substantially younger worker, not necessarily someone outside the ADEA's protected class, was given more favorable treatment. *Dugan v. Albemarle Cnty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002). Although a plaintiff does not necessarily need to allege facts sufficient to establish all elements of a *prima facie* case under the ADEA in order to avoid dismissal under Rule (12)(b)(6), a plaintiff nevertheless must plead facts sufficient to support a reasonable inference that an adverse employment action was motivated by bias or discrimination. *See McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 584–85 (4th Cir. 2015).

Here, there is no dispute that Tittle, who was 73 years old at the time of his termination, was a member of the protected class under the ADEA, and that he was subjected to an adverse employment action when he was terminated from his position.   Defendants challenge the sufficiency of Tittle's allegations of a *prima facie* case as to the fourth element, specifically on the basis that Tittle has not identified comparators who were treated more favorably under similar circumstances, or other circumstantial evidence, to establish a plausible inference that he was discriminated based on age. Although a full analysis of whether comparators are similarly situated does not necessarily occur at the motion-to-dismiss stage, a plaintiff must still plead sufficient facts to justify an inference that the employer treated the plaintiff differently from the way it treated

13

others under "arguably similar circumstances." *Woods v. City of Greensboro*, 855 F.3d 639, 651 (4th Cir. 2017). "Overall, the inquiry simply asks whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other *prima facie* evidence, would allow a jury to reach an inference of discrimination." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (quoting *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011)).

In the Complaint, Tittle focuses on the actions taken against him, but he generally alleges disparate treatment in various ways. In relation to the institution of the first PIP against him, Tittle generally asserts that his "substantially younger co-workers, who delivered similar performances were not similarly subjected to PIPs," Compl. ¶ 18, and that while the PIP was extended for a four-month period in the spring of 2018, NASA "did not similarly extend the performance period of Plaintiff's substantially similar, younger co-workers." *Id.* ¶ 33. In discussing the second PIP, Tittle asserts that his "substantially similar, younger co-workers were not held to similar, unreasonable performance standards," *id.* ¶ 30; that the assignments given to him, including the calibration duties and the weekly documentation in group laboratory notebooks, had "never had been required of [his] similarly-situated, younger co-workers," *id.* ¶¶ 23, 29; that his "substantially younger co-workers were not similarly denied resources, materials, equipment and training essential to performing their jobs," *id.* ¶ 26; and that while he was required to work on a 12-year-old computer, his "younger co-workers had received frequent (3-year or 5-year) updates and refreshes to their computers with which to perform their duties," *id.* ¶ 2. Tittle also alleged that while he was held responsible for actions that occurred while he was on leave, his "younger co-workers were not held accountable for performance when they were absent on annual or sick leave." *Id.* ¶ 31.

14

Beyond these general statements about groups of employees, Tittle has not provided any specific allegations of more favorable treatment of any particular employee or employees who are substantially younger than him and who faced similar circumstances relating to performance reviews and PIPS, but who received more favorable treatment. The Complaint therefore lacks factual allegations that would support an inference that there were comparators who were similarly situated in all relevant respects yet treated more favorably. The United States Court of Appeals for the Fourth Circuit has upheld the dismissal of discrimination claims based on disparate treatment where the plaintiffs alleged even greater detail than Tittle has provided. In one such case, a law enforcement officer in a sheriff's office alleged that because of age discrimination, he was not promoted and later terminated after an alleged rules violation when he made a comment about another employee's racial intolerance. *Tickles v. Johnson*, 805 F. App'x 204, 205–06 (4th Cir. 2020). Although the plaintiff identified specific comparators who were promoted even though they were "less qualified," the only basis for this allegation was that they did not meet the minimum years of service for the promotion set forth in applicable "Guidelines." *Id.* As to the termination, the plaintiff asserted that there were "younger officers" who violated "rules and policies," but who were "written up and/or placed on probation" rather than terminated. *Id.* at 205. The court nevertheless affirmed the dismissal of both claims on the grounds that the allegations were too "conclusory and factually unadorned to give rise to a reasonable inference" of age discrimination, including because the complaint failed to identify the "nature of the requirements for promotion," the proximity of the proposed comparators' age to his own, or the specific rules violations by the proposed comparators. *Id.* at 208.

In another instance, in which a teacher alleged race discrimination based on the fact that she was not permitted to return to work with a medical restriction of no prolonged standing, the

15

plaintiff alleged that similarly situated white teachers were "permitted to return to work with more severe restrictions or medical conditions," including some who had "similar standing restrictions." *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017).  The Fourth Circuit, however, upheld the dismissal of the case because the plaintiff had failed to "provide any factual enhancement regarding the alleged comparators," such as "the medical conditions or restrictions," so as to permit the court to reasonably infer that they were similarly situated.  *Id*. at 749.

Here, Tittle's allegations are similarly insufficient.  Other than generally stating that younger employees were not subjected to the same actions taken against him, Tittle has identified no facts that would support the conclusion that they were similarly situated to a sufficient degree as to support an inference of age discrimination.  He has not alleged with any specificity that his younger co-workers had comparable job duties, job performance, qualifications, or conduct, or even that they were subject to the same decisionmaker.  *See Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 420 (D. Md. 2015) (listing relevant factors to establish a similarly situated comparator).  In particular, he has failed to allege facts showing that there was any particular substantially younger employee whose performance was comparable to his but who was not placed on a PIP, who was subjected to differential treatment or standards once on a PIP, or whose performance during and after a PIP was comparable but did not lead to termination.  *See Tickles*, 805 F. App'x at 208.  Tittle cites *Renibe v. University of Maryland*, No. DKC-22-0618, 2023 WL 2585664 (D. Md. Mar. 21, 2023), as an example in which the court denied a motion to dismiss even though the complaint did not identify specific comparators by name, *id.* at *7–8, but it is Tittle's lack of specificity as to the circumstances of the comparison, not the lack of names, that renders the Complaint insufficient.

Tittle correctly asserts that even if he has not identified a valid comparator, he can establish an inference of discrimination through other means. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545–46 (4th Cir. 2003).  To do so, Tittle points to the allegations that NASA "flouted its own policies and procedures regarding performance management and discipline" as evidence of discriminatory animus.  Opp'n at 26, ECF No 18.  Specifically, Tittle alleges in the Complaint that his supervisors extended his PIP for four months in 2018, assigned him duties during the PIP that were outside of his job description, failed to meet with him regularly during the PIP, denied him equipment, materials, components, processes, and test standards necessary to perform the calibration duties required of him, penalized him for taking leave, and refused to disclose the source from which Wolff received information that Tittle was not meeting the PIP's requirements, all actions that Tittle alleges were contrary to NASA's standard policies and procedures.  Although not alleged in the Complaint, Tittle also asserts in his memorandum in opposition to the Motion that Wolff was pressured by his superiors to find a way to "get rid" of Tittle.  *Id.* at 2.

Viewing the allegations in the Complaint in the light most favorable to Tittle, and even considering the additional referenced allegations that could be added by amendment, the Court finds that they may support the conclusion that Tittle was targeted in some way but do not provide a basis to infer discriminatory intent based on age.  Tittle, for example, has not alleged that his employers made any derogatory comments about his age.  *See Arthur v. Pet Dairy*, 593 F. App'x 211, 218–19 (4th Cir. 2015).  Tittle has also not alleged that NASA or his supervisors have any prior history or pattern of discriminating based on age.  *See Woods*, 855 F.3d at 649 (stating that a court "may infer discriminatory intent from evidence of a general pattern of . . . discrimination in the practices of a defendant").  Without more, Tittle's allegations showing that he is in a protected class and appears to have received unfair treatment at work is not enough to support an inference

17

of age discrimination. *See Balazas v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994) ("We do not believe that Title VII authorizes courts to declare unlawful every arbitrary and unfair employment decision." (quoting *Holder v. City of Raleigh*, 867 F.2d 823, 825–26 (4th Cir. 1989))); *see Bing v. Brivo*, 959 F.3d 605, 617 (4th Cir. 2020) (holding that a "hasty or even unfair" termination decision did not amount to racial discrimination). *Cf. McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 586 (4th Cir. 2015) (noting that an allegation that non-Black decisionmakers hired non-Black applicants instead of the plaintiff was "*consistent* with discrimination" but did not alone "support a *reasonable inference* that the decisionmakers were motivated by bias"). Accordingly, where Tittle has not provided allegations showing that a similarly situated comparator outside the protected class was treated more favorably, and has alleged no other facts supporting an inference of age discrimination, the Motion will be granted because Title has failed to state a viable claim of age discrimination.

## CONCLUSION

For the foregoing reasons, NASA's Motion to Dismiss will be GRANTED. A separate Order shall issue.

Date:  July 11, 2025



THEODORE D. CHUANG
United States District Judge